UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL PARKER, | ) |
|           Plaintiff | ) ) ) |
| v. | )   Civil No. 04-163-P-C |
| PHEBE DIXON, et al., | ) ) ) |
|           Defendants | ) |

*Recommended Decision on Motion for Summary Judgment*

This action by pro se plaintiff, Michael Parker, was removed from state court. Parker seeks damages from the defendants, alleging that personnel at the Cumberland County Jail improperly treated a pre-incarceration knee injury in violation of his constitutional right to adequate medical care while incarcerated.[1] Defendants Cumberland County Jail Administration, Cumberland County Transport Office, Francine Breton, and Steve Breton, move for summary judgment.  (Docket No. 24.)  Parker has failed to respond in any manner to this motion.  Because the defendants have demonstrated that they are entitled to judgment as a matter of law, I recommend that the Court **GRANT** the motion.

*Discussion*

The defendants are entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and the defendants are

---

[1] Parker also brings a state negligence claim on which these defendants are understandably silent; I do not take Parker as bringing this negligence count, which must be one for medical malpractice, against this set of defendants.

"entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id. I review the record in the light most favorable to Parker, the passive opponent of summary judgment, and I indulge all reasonable inferences in his favor. See Feliciano De La Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). However, the reality that Parker has failed to place a single one of the defendants' facts in dispute means that I deem the properly supported facts as admitted, see Faas v. Washington County, 260 F. Supp. 2d 198, 201 (D. Me. 2003). Parker's pro se status does not relieve him of his duty to respond, see Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y 2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment"), nor alter the Court's obligation to fairly apply the rules governing summary judgment proceedings, see Fed. R. Civ. P. 56; Dist. Me. Loc. R. Civ. P. 56.

*Material Facts*

On January 17, 1998, Michael Parker entered the custody of the Cumberland County Jail. During the process of his intake screening, Parker identified that he had a dislocated left knee. (Defs.' SMF ¶ 1.) On January 20, 1998, Parker was seen by a physician from the Jail's medical provider named Dr. Ballard. (Id. ¶ 2.) Parker was seen on January 27, 1998, at which time he stated that his knee was hurting and that he had not been using his crutches. Parker claimed that the pain had started the day before, and Tylenol 3 was ordered for the Parker's pain. (Id. ¶ 3.) On February 2, 1998, Parker was

seen by the medical department, at which time he reported knee pain, that he was using his crutches, but not using his knee immobilizer. An examination of the knee revealed mild swelling. (Id. ¶ 4.)

On May 6, 1999, medical records reflect that Michael Parker was involved in an altercation with another inmate and, after the altercation, Parker threw his knee immobilizer away. (Id. ¶ 5.) On May 12, 1998, a member of the medical staff saw Parker playing basketball and observed that he appeared to have no problem with his left knee. This was followed up on May 13, 1998, when a medical staff member had a discussion with the jail's recreation officer. It was reported that Parker had been playing basketball for a couple of weeks with a slight limp. Upon being told that he should not be playing basketball, Parker told the recreation officer that his knee did not hurt anymore. (Id. ¶ 6.)

On May 14, 1998, Parker was seen for an outpatient orthopedic evaluation by Lincoln Avery, M.D. Dr. Avery noted that Parker needed to have his menisci treated, and it was explained to Parker that he needed to have his ligaments reconstructed at some point. The doctor went on to explain to Parker surgical intervention was not his recommendation at that time because Parker had already demonstrated non-compliance, and more importantly, there was just no reasonable way to get to the one-year recovery and rehabilitation process-- which is necessary and important in a protected setting for PTL and LCL reconstruction -- while in jail. Avery went on to tell Parker that once he was out of jail and could be regularly compliant and cooperative with a supervised therapy program that he would be a candidate. In the meantime, Dr. Avery would treat him conservatively with bracing, adding that Parker needed an arthroscopic

3

meniscectomy which would be set up on an outpatient basis as scheduling permitted. (Id. ¶ 7.)

On May 15, 1998, the medical department at the Jail noted that arthroscopic surgery was to be scheduled if Parker was compliant with physical therapy, compliance which included attending two times per week for one month, wearing his knee support, and keeping weight off the knee by using crutches. This is noted to have been a group decision by the medical staff, corporate offices for the jail's medical provider, and Dr. Avery.  It was also noted that Parker agreed to these conditions.  (Id. ¶ 8.)

On May 16, 1998, Parker appeared at "med pass" without his crutches. When asked where his crutches were, he stated "I don't do work in the pod with them." (Id. ¶ 9.) On May 18, 1998, the medical department made an inquiry as to whether Parker was wearing his brace and using his crutches. The pod officer responded to this inquiry by indicating that Parker was wearing his brace, but he was not using his crutches.  (Id. ¶ 10.)

The jail's records reflect that Parker attended physical therapy on May 22, 1998, May 27, 1998, May 29, 1998, June 12, 1998, and June 24, 1998.  Parker's June 3, 1998, physical therapy session was canceled because of his appearance at court. (Id. ¶ 11.)  The jail's records reflect that on June 22, 1998, Parker refused physical therapy stating as the reason "because I don't feel like it."  On July 3, 1998, Parker refused physical therapy stating "I don't want anything to do with you people." (Id. ¶ 12.)

On July 6, 1998, x-rays were taken of Parker's left knee as a result of a fight he was in on July 4, 1998.  (Id. ¶ 13.)  Parker had been tentatively scheduled for surgery on July 14, 1998.  (Id. ¶ 14.)  On July 12, 1998, his medical file was reviewed and it was

noted that he had refused physical therapy on three occasions. A call was made to Dr. Avery and the Jail medical provider's corporate office and a decision was made to place Parker's surgery on hold. (Id. ¶ 15.)

On July 30, 1998, Parker got into another altercation with an inmate, and claimed he twisted his knee and it popped. As a result of the injury of July 30, 1998, Parker was transported to Mid Maine Medical Center Emergency Room where he was diagnosed as having suffered a ligament strain. The instructions given by the hospital were to wrap the knee and for Parker to stay off of it. This information was provided to the jail's medical provider, and on July 30, 1998, the records reflect that Parker was given crutches and told to stay off of his knee. (Id. ¶ 16.) Parker was also in altercations with inmates on May 5, 1998 and July 4, 1998. (Id. ¶ 17.)

On August 19, 1998, the medical records reflect that Parker requested surgery and physical therapy. There was a discussion between Parker and the Jail medical personnel regarding Parker's history of noncompliance. (Id. ¶ 18.) On September 3, 1998, the medical records identify that x-rays were taken of Parker's left knee and these revealed a bone chip in the knee. The x-rays were compared with the x-rays taken on July 6, 1998, and it was determined that the bone chip was an old bone chip. (Id. ¶ 19.) Parker's left knee was again x-rayed on September 14, 1998, and the radiologist determined that there was no acute injury or significant internal change from September 3, 1998. (Id. ¶ 20.) On September 18, 1998, Parker had an orthopedic consult with regard to the bone chips in his left knee. Surgery was scheduled and conducted on Parker's left knee on October 20, 1998. (Id. ¶ 21.) Parker left the custody of the Cumberland County Jail on or about December 7, 1998. (Id. ¶ 22.)

5

At no time during Parker's incarceration was transport refused by jail staff, specifically Defendant Steve Breton. In the absence of a compelling security risk, if an outside medical appointment is made by the medical department, then the transport officers are simply instructed to take the inmate to the scheduled appointment. There is no discretion on the part of the officer that would allow them to refuse such a request, and there are no records reflecting that Parker had scheduled medical appointments between his surgery on October 20, 1998, and his release date on December 8, 1998, which would have required medical transport. (Id. ¶ 23.)

The Cumberland County Jail is the only correctional facility in the State of Maine that is accredited with the American Correctional Association. As part of this process, all policies and procedures are reviewed by the American Correctional Association, and accreditation is dependent upon the facilities meeting the standards of the American Correctional Association. The standards of the American Correctional Association meet the requirements of the Maine Department of Corrections standards for jails, and in many cases exceed these requirements. (Id. ¶ 24.) Cumberland County Jail Policy F-310 sets forth that the jail's medical services include, at a minimum, non-emergency medical services, non-emergency dental services, mental health services, emergency services, and twenty-four hour, seven day-a-week, coverage by nurse staffing on site, with a physician, physician's assistant, or nurse practitioner on call. Policy F-310 provides that "all medical and dental matters involving medical judgment are the sole province of the responsible physician and dentist, respectively." (Id. ¶ 25.)

*Deliberate Indifference to Medical Care*

The United States Supreme Court has established the contours of the deliberate indifference inquiry in two cases: Estelle v. Gamble, 429 U.S. 97 (1976) and Farmer v. Brennan, 511 U.S. 825 (1994). Estelle identified in the Eighth Amendment protection the "government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. The Court observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id.; see also Helling v. McKinney, 509 U.S. 25, 32, (1993) ("The substantive limits on state action set by the Eighth Amendment," when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs" including food and medical care).

In Farmer the Court more precisely articulated the standard a plaintiff such as Parker must meet to hold a prison personnel liable for Eighth Amendment claims of this variety. It identified two prongs. The deprivation alleged must be "objectively 'sufficiently serious.'" 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); see also Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir.2002) ("The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities," emphasis added). Second, under Farmer, a defendant must have a culpable state of mind, which means that the defendant was deliberate in his or her indifference to Parker's health or safety. 511 U.S. at 834; see also Walker v. Peters, 233 F.3d 494, 99 (7th cir.2000) ("We do not consider what a reasonable doctor would have done. That is an objective test, and Farmer dictated a subjective analysis. Nor is it enough to show that a prison doctor

7

committed malpractice. At the very least, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm.") (citations omitted). I have employed this analysis in other Eighth Amendment medical care cases, see, e.g., Hamlin v. Prison Health Servs. Inc., Civ. No. 169-B-W, 2004 WL 2980749, *7 (D. Me. 2004); Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 56-57 (D.Me.2002), and it is the analysis I apply to this factual record.

It is clear from the undisputed material facts set forth above that these defendants are entitled to judgment as a matter of law on Parker's Eighth Amendment claim. There is no evidence that would justify holding these defendants accountable under a deliberate indifference standard. On this record, in fact, it seems that if any one was deliberately indifferent to Parker's medical needs, it was Parker himself. As there is no Eighth Amendment violation, none of these defendants can be held liable on a supervisory or a policy and custom theory. See Wilson v. Town of Mendon, 294 F.3d 1, 6 -7(1st Cir. 2002); see also Bowman v. Corrections Corp. of America, 350 F.3d 537, 544-47 (6th Cir. 2003).

## *Conclusion*

For these reasons I recommend that the Court **GRANT** this motion for summary judgment.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

>Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 31, 2005.

>/s/Margaret J. Kravchuk
>U.S. Magistrate Judge